IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIBERTO L. BALDOZA, et al.,

        Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

        Defendants.

Case No.: C-12-05966 JCS

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING COMPLAINT WITH LEAVE TO AMEND**

## I.    INTRODUCTION

Plaintiffs Eriberto and Leonora Baldoza ("Plaintiffs") brought an action against Defendants Bank of America, N.A. ("Bank of America"), The Bank of New York Mellon f/k/a The Bank of New York ("BNY Mellon") as Trustee for the Alternative Loan Trust 2006-OA14 Mortgage Pass-Through Certificates, Series 2006-OA14 ("2006-OA14 Trust"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants") alleging causes of action for wrongful foreclosure, quiet title, fraud, cancellation of instruments, unfair business practices in violation of California Business and Professions Code Section 17200 ("UCL"), and unjust enrichment.  Presently before the Court is Defendants' Motion to Dismiss ("Motion").   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b).  For the reasons set out below, the Court GRANTS the Motion, the Complaint is dismissed with leave to amend.

//

//

//

## II.     BACKGROUND

### A.     The Complaint

#### 1.     Factual Background

On June 5, 2006, Plaintiffs executed a mortgage on their property located at 6241 Tourraine Drive, Newark, California ("the Property").  Complaint, ¶ 7 and Ex. A.  The mortgage was documented in a Deed of Trust ("DOT") and an Adjustable Rate Note ("Note").  *Id*.[1]  The DOT identified BrooksAmerica Mortgage Corporation ("BrooksAmerica") as the lender, MERS as the beneficiary acting solely as a nominee for Lender and Lender's successors and assigns, and LSI, A Fidelity National Financial Company ("LSI") as the trustee.  *Id*. at ¶ 7 and Ex. A ¶¶ (C)-(E).

Plaintiffs allege that Countrywide Home Loans Servicing, LP ("Countrywide") was the original servicer of their loan.  *Id*. at ¶ 8.  Plaintiffs further allege that BAC Home Loans subsequently assumed servicing rights of their loan.  *Id*.  The servicing rights passed to Defendant Bank of America when it merged with BAC Home Loans.  *Id*.

Plaintiffs allege that Countrywide sold their mortgage loan to the 2006-OA14 Trust in an undocumented transaction prior to the September 1, 2006 date specified in the Pooling and Servicing Agreement ("PSA") governing the trust.  *Id*. at ¶ 9.  However, Plaintiffs also allege that the 2006-OA14 Trust has no present interest in their mortgage loan because the securitization was not accomplished in compliance with the terms of the PSA.  *Id*. at ¶ 23.

On March 6, 2012, MERS executed an Assignment of Deed of Trust ("First Assignment") purportedly conveying Bank of America all beneficial interest in Plaintiff's mortgage loan.  *Id*. at ¶ 10 and Ex. C.  Plaintiffs allege that MERS was acting as an agent for BrooksAmerica, but that BrooksAmerica did not exist as an entity in March 2012.  *Id*. at ¶¶ 10-11.  For that reason, and because the mortgage loan had been sold to the MBS Trust, Plaintiffs allege that MERS had no interest in their mortgage loan to transfer to Bank of America.  *Id*. at ¶ 11.

The March Assignment was signed by Srbui Muradyan ("Muradyan") on behalf of MERS.  *Id*. at Ex. C.  Plaintiffs allege on information and belief that Muradyan is a "robo-signer" who was not employed by MERS but was instead employed by Bank of America.  *Id*. at ¶¶ 13, 39.  Therefore,

---

[1] Plaintiffs did not attach a copy of the Note to their Complaint.

2

United States District Court
Northern District of California

1   Plaintiffs allege that Bank of America acted as both the assignor and the assignee in the same

2   transaction.  *Id*.  Plaintiffs do not identify any information supporting their belief that Muradyan was a

3   robo-signer employed by Bank of America.

4       On April 9, 2012, MERS again executed an Assignment of Deed of Trust ("Second

5   Assignment") purportedly conveying Bank of America all beneficial interest in Plaintiffs' mortgage

6   loan.  *Id*. at ¶ 14 and Ex. D.  Plaintiffs allege that MERS had no interest to transfer in the April

7   Assignment for the same reasons it had no interest to transfer in the March Assignment.  *Id*. at ¶ 14.

8       The April Assignment was signed by Loryn Stone ("Stone").  *Id*. at Ex. D.  Plaintiff alleges on

9   information and belief that Stone was not employed by MERS but was instead employed by Bank of

10   America.  *Id*. at ¶ 15.  Therefore, Plaintiffs allege that Bank of America acted as both the assignor and

11   the assignee in the same transaction.  *Id*.

12      Indeed, on the same day, April 9, 2012, Stone also signed, on behalf of Bank of America, a

13   Substitution of Trustee ("Substitution") replacing LSI with Recontrust Company, N.A. ("Recon")[2] as

14   the trustee on the initial DOT.  *Id*. at ¶ 17 and Ex. E.  Plaintiff alleges that the Substitution is void

15   because Bank of America was not a valid beneficiary of their mortgage loan, and thus lacked power to

16   substitute trustees.  *Id*. at ¶ 18.

17      Also on April 9, 2012, Recon executed a Notice of Default and Election to Sell Under Deed of

18   Trust ("NOD").  *Id*. at ¶ 19 and Ex. F.  Plaintiffs allege that Recon lacked authority to initiate

19   foreclosure because it was not validly substituted as trustee and because it purported to act on behalf

20   of Bank of America, which was not a beneficiary of Plaintiffs' mortgage loan.  *Id*. at ¶ 19.  Recon

21   subsequently issued a Notice of Trustee Sale ("NTS") scheduling a foreclosure sale for December 27,

22   2012.  *Id*. at ¶ 22 and Ex. G.

23      Finally, based on the foregoing, Plaintiffs allege that no defendant has standing to enforce

24   Plaintiffs' mortgage loan or collect mortgage payments from them.  *Id*. at ¶ 25.

25                  **2.      Alleged Causes of Action**

26      Plaintiffs allege the following six causes of action:

27

28   _____

[2] As discussed below, Plaintiffs asserted several causes of action against Recon.  Plaintiffs have since voluntarily dismissed Recon from this action.

United States District Court
Northern District of California

1)      Wrongful Foreclosure:  Plaintiffs allege that Recon breached its duty not to infringe on the rights of another by initiating foreclosure relying on illegal and knowingly fraudulent documents. *Id*. at ¶¶ 29-31 (citing Cal. Civ. Code § 1708; *Munger v. Moore*, 11 Cal.App.3d 1, 7-8, 89 Cal.Rptr. 323 (1970).  Plaintiffs allege that they have suffered damages including imminent loss of their property, severe emotional distress, they wrongfully made mortgage payments to Bank of America and its predecessors, and damage to their credit.  *Id*. at ¶ 32.  Plaintiffs allege that Recon, as a trustee, acted on behalf of its principal, either Bank of America or BNY Mellon, and that therefore Recon's conduct may be imputed to them.  *Id*. at ¶¶ 27, 30.  In other portions of their Complaint, Plaintiff's also allege that Defendants did not comply with sections of California's nonjudicial foreclosure statute.  *Id*. at ¶¶ 18, 20.  First, Plaintiffs allege that all beneficiaries did not consent to the Substitution in violation of California Civil Code Section 2934a.  *Id*. at ¶ 18.  Second, Plaintiffs allege that the NOD did not contain a statement of the nature of each breach known to the beneficiary in violation of California Civil Code Section 2924(a)(1)(C) because Bank of America, which supplied the information, was not a beneficiary.  *Id*. at ¶ 20.

2)      Quiet Title:  Plaintiffs allege that their obligation to repay their loan was extinguished when BrooksAmerica securitized their mortgage loan because it was paid all sums secured by their DOT.  *Id*. at ¶ 35.  Plaintiffs allege that Bank of America and BNY Mellon assert an interest in the Property.  *Id*. at ¶ 36.  Because Plaintiffs allege that ownership of the Property is theirs alone, they seek to quiet title.  *Id*. at ¶ 37 (citing Cal. Code Civ. P. § 760.020).

3)      Fraud:  Plaintiffs allege that MERS fraudulently executed the March Assignment and the April Assignment because MERS knew the mortgage loan had been sold to the MBS Trust divesting MERS of any interest.  *Id*. at ¶ 39.  Plaintiffs also allege that Muradyan acted as both assignor and assignee in the transaction.  *Id*.  Plaintiffs allege that Bank of America and its predecessors knowingly held themselves out as authorized to collect mortgage payments on behalf of BrooksAmerica, and later on Bank of America's own behalf.  *Id*. at ¶ 40.  Plaintiffs allege that MERS and Bank of America knowingly recorded a fraudulent substitution inserting Recon as trustee.  *Id*. at ¶ 41.  Thereafter, Plaintiffs allege, Recon knowingly filed fraudulent a NOD and a fraudulent NTS acting on behalf of MERS and Bank of America.  *Id*.  Plaintiffs allege that MERS, Bank of America,

United States District Court
Northern District of California

and Recon had knowledge of the falsity of the NOD and NTS and intended to defraud Plaintiffs. *Id.* at ¶ 42. Plaintiffs allege that they justifiably relied on Defendants' false representations and suffered impaired creditworthiness, the imminent loss of their home, wrongful mortgage payments, and emotional distress as a result. *Id.* at ¶ 43.

4) <u>Cancellation of Instruments</u>: Plaintiffs allege that the Note and the DOT should be cancelled because Defendants created, published, and recorded documents that are void and will cause serious injury to Plaintiffs. *Id.* at ¶ 46 (citing Cal. Civ. Code § 3412). Plaintiffs state that the DOT is subject to cancellation because it, like the other documents, appears valid on its face. *Id.* at ¶ 47 (citing Cal. Civ. Code § 3413). Plaintiffs also allege that the March Assignment, the April Assignment, the Substitution, the NOD, and the NTS are subject to cancellation. *Id.* at ¶ 50.

5) <u>Violation of Business and Professions Code Section 17200 *et seq.*</u>: Plaintiffs allege that the above-described conduct is deceptive, that it continues to this day, and that several aspects of the conduct violate California statutes and criminal law. *Id.* at ¶¶ 53-54. Plaintiffs allege that this provides Defendants an unfair competitive advantage, defrauds consumers, and enriches Defendants. *Id.* at ¶ 55. Plaintiffs claim damages including imminent loss of their property, emotional distress, damage to their creditworthiness, inability to modify their loan, and payments wrongfully made to Defendants. *Id.* at ¶ 56. Plaintiffs request injunctive relief, arguing that the harm to Plaintiffs and the general public outweighs any utility from Defendants practices. *Id.* at ¶¶ 56-58.

6) <u>Unjust Enrichment</u>: Plaintiffs argue that Bank of America, as servicer, and BNY Mellon, as purported beneficiary, had no right to collect payments from them. *Id.* at ¶ 62. Because Bank of America collected payments, Plaintiffs claim that Bank of America and BNY Mellon acquired a benefit at the expense of Plaintiffs. *Id.* Plaintiffs demand return of the payments made. *Id.* at ¶ 63.

   **B.   Motion to Dismiss**

First, Defendants argue that documents subject to judicial notice demonstrate that they initiated the foreclosure process in compliance with the California nonjudicial foreclosure statute. Defendants assert that Plaintiffs took a $469,000 loan subject to the DOT on the Property. Motion to Dismiss, 2 (citing Request for Judicial Notice ("RJN"), Ex. A). The DOT lists Plaintiffs as the

1   Borrower, BrooksAmerica as the Lender, LSI as the trustee, and MERS as the "Beneficiary" acting

2   solely as a nominee for Lender and Lender's successors and assigns.  *Id*. (citing RJN, Ex. A).

3   Defendants state that MERS assigned its beneficial interest in the DOT to Bank of America pursuant

4   to the First Assignment in March, 2012.  *Id*. (citing RJN, Ex. B).  MERS submitted a duplicative

5   assignment on April 9, 2012.  *Id*. (citing RJN, Ex. C).  That same day, Bank of America substituted

6   Recon as trustee through the Substitution.  *Id*. (citing RJN, Ex. D).  Also that same day, Recon issued

7   the NOD.  *Id*. (Citing RJN Ex. E).  Recon issued the NTS on July 12, 2012.  *Id*. (Citing RJN, Ex. F).

8          Second, Defendants contend that the Complaint should be dismissed in its entirety because

9   Plaintiffs failed to allege tender.  *Id*. at 3-5.  Defendants assert that tender is required to challenge any

10  attempt to challenge a foreclosure or a pending foreclosure, including claims implicitly integrated

11  with the foreclosure.  *Id*. at 4 (citing *Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109, 51

12  Cal.Rptr.2d 286 (1996); *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16,

13  2009)).  Defendants state that each of Plaintiffs' claims are implicitly integrated with their challenge

14  to the pending foreclosure on their property.  *Id*. at 5.

15         Third, Defendants assert that Plaintiffs lack standing to challenge securitization or assignment

16  of their loan.  *Id*. at 5-7.  Defendants argue that Plaintiffs are not parties to the pooling and servicing

17  agreement of the loan trust, so they cannot enforce that agreement.  *Id*. at 6.  Moreover, Defendants

18  argue that Plaintiffs cannot challenge the assignment of an interest in the DOT because they have not

19  been prejudiced by any assignment thereof.  *Id*. at 6-7 (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198

20  Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *Herrera v. Federal National Mortg. Ass'n*, 205

21  Cal.App.4th 1495, 1502, 141 Cal.Rptr.3d 326 (2012)).

22         Finally, Defendants turn to Plaintiffs' claims:

23         (1)    <u>Wrongful Foreclosure</u>:  As laid out above, Defendants assert that they have acted in

24  compliance with the California nonjudicial foreclosure statutory scheme.  *Id*. at 7-8.

25         (2)    <u>Quiet Title</u>:  Defendants state that they have no competing claim to title to the

26  Property.  *Id*. at 9.  Instead, Defendants assert a lien right.  *Id*.  Defendants state that the right to

27  foreclose pursuant to a DOT is an insufficient foundation for an action to quiet title.  *Id*. (citing *Vega*

28  *v. JP Morgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1120-1121 (E.D. Cal. 2009)).  In addition,

1    Defendants argue that Plaintiffs' claim is deficient because they have not alleged tender. *Id.* (citing

2    *Pedersen v. Greenpoint Mort. Funding, Inc.*, 2011 WL 381856, at *13 (E.D. Cal. Aug. 29, 2011)).

3          (3)    Fraud:  Defendants note that the cause of action for fraud is based on Defendants

4    executed fraudulent assignments.  *Id.* at 10.  Defendants contend that each assignment was validly

5    executed.  *Id.*

6          (4)    Cancellation of Instruments:  Defendants state that cancellation of instruments is an

7    equitable remedy and not an independent basis for liability.  *Id.* (citing *Lawson v. CitiCorp Trust*

8    *Bank, FSB*, 2011 WL 3439223, at *7 (E.D. Cal. Aug 5, 2011)).  Further, Defendants contend that to

9    be eligible for the remedy a complaint must contain allegations showing that the instrument is void or

10   voidable, as by showing that the instrument was procured by fraud, accident, or mistake, and that the

11   instrument appears valid but is invalid.  *Id.* at 10-11 (citing Cal. Civ. Code § 3412; *Hughes v. Beekley*,

12   85 Cal.App. 313, 316 (1927); *Hironymous v. Hiatt*, 52 Cal.App. 727, 731 (1927) *abrogated on other*

13   *grounds by Robertson v. Superior Court*, 90 Cal.App.4th 1319, 109 Cal.Rptr.2d 650 (2001)).

14   Defendants assert that Plaintiffs have not pled these elements.

15         (5)    UCL:  Defendants argue that Plaintiffs lack standing because they have not suffered an

16   injury that would entitle them to restitution.  *Id.* at 11.  Moreover, Defendants contend that Plaintiffs

17   cannot establish a violation under the "unlawful" prong because Defendants acted in compliance with

18   the law.  *Id.* at 12.  In addition, Defendants assert that Plaintiffs cannot establish a violation under the

19   "fraudulent" prong because they have not alleged that Defendants had an affirmative duty to disclose

20   information to prevent deception.  *Id.* (citing *Buller v. Sutter Health*, 160 Cal.App.4th 981, 988, 74

21   Cal.Rptr.3d 47 (2008)).

22         (6)    Unjust Enrichment:  Defendants assert that unjust enrichment is not a cause of action

23   in California.  *Id.* at 13.  Even if unjust enrichment is a cause of action, Defendants contend that

24   Plaintiffs have not pled that Defendants unjustly received and retained a benefit given that Defendants

25   were entitled to the payments made under the DOT.  *Id.* (citing *Lectrodryer v. SeoulBank*, 77

26   Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000)).

27   //

28   //

United States District Court
Northern District of California

**C.      Opposition**

Plaintiffs state that BrooksAmerica, the original Lender, sold its beneficial interest in their mortgage loan to the 2006-OA14 Trust in or before September 2006.  Opposition, 5 (citing Complaint, ¶¶ 7, 9, 11).  For that reason, Plaintiffs contend that the subsequent transactions were invalid because MERS had no interest to assign to Bank of America, its beneficial interest being extinguished by the transfer.  *Id.* at 6-7, 13-16.  Plaintiffs also contend that the transactions are independently invalid because they were signed by Bank of America employees acting on behalf of MERS.  *Id.* at 6.

Plaintiffs note that the putative assignments were made at a point, in 2012, when the loan was already in default.  *Id.*  Plaintiffs assert that the only possible motivation for Bank of America to purchase a loan in default was that the loan was not properly securitized in the 2006-OA14 Trust, because agreements governing the trust were violated.  *Id.*  Plaintiffs concede that Bank of America may have been the loan servicer for the 2006-OA14 Trust, but state that Bank of America cannot be servicer of their loan as a result of the defective securitization.  *Id.*  Plaintiffs argue that Bank of America filed the sham documents at issue in this case to unload a non-performing loan on behalf of its principal, the 2006-OA14 trust.  *Id.*

Plaintiffs argue that Defendants cannot initiate foreclosure because, based on the deficiencies described above, they have not established their standing to do so.  *Id.* at 8-11 (citing *Barrionuevo v. Chase Bank, N.A.*, 885 F.Supp.2d 964 (N.D. Cal. Aug. 6, 2012) (cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a notice of default initiating the foreclosure process); (*Ohlendorf v. Am. Home Mortg. Serv'g*, 279 F.R.D. 575, 583 (E.D. Cal. 2010); *Castillo v. Skoba*, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010); (*Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1156, 121 Cal.Rptr.3d 819 (2011) (wrongful foreclosure action is proper where the plaintiff identifies a specific factual basis for alleging that the foreclosure was not initiated by the correct party)).  Plaintiffs argue that tender is not required because Defendants lack authority to foreclose.  *Id.* at 11-12 (citing *Frazier v. Aegis Wholesale Corp.*, 2011 WL 603391 (E.D. Cal. Dec. 16, 2011); *Tamburri v. Suntrust Mortg.*, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011); *Sacchi v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 2533029, at *2 (S.D. Cal.

1   June 24, 2011)).  Moreover, Plaintiffs contend that they have been prejudiced by Defendants

2   assignments because they have made payments to Defendants that did not go to the unidentified true

3   beneficiary of their mortgage loan and because they were denied the procedural due process afforded

4   by California's nonjudicial foreclosure statues.  *Id*. at 12-13.

5       As to their quiet title cause of action, Plaintiffs contend that they are entitled to clear the title

6   to their mortgage, which they have alleged is the 2006-OA14 Trust and not Bank of America.  *Id*. at

7   18 (citing *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 2011 WL 3818560 (E.D. Cal. Aug. 29,

8   2011)).

9       Regarding their cancellation of instruments claim, Plaintiffs request leave to amend to the

10  extent they have not pled the apparent validity and actual invalidity of the DOT or that it was

11  procured by fraud, accident or mistake.  *Id*. at 16.  Plaintiffs contend that Defendants have only

12  challenged this claim as to the DOT, not as to any other document.  *Id*.

13      Plaintiffs argue that they have pled a UCL cause of action based on violations of the

14  nonjudicial foreclosure statute and the underlying denial of their due process rights secured by Article

15  I, Section 7 of the California Constitution.  *Id*. at 17.  Plaintiffs argue that these are also violations

16  under the "unfair" prong.  *Id*. (citing *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247,

17  256, 106 Cal.Rptr.3d 46 (2010)).  Plaintiffs also state that their Complaint alleged a violation of

18  California Penal Code section 115.  *Id*.

19      Finally, Plaintiffs contend that they stated a claim for unjust enrichment based on Defendants'

20  unjustified charging and retention of the mortgage fees.  *Id*. at 17-18.  Paintiffs also argue that their

21  cause of action is not precluded by contract because there is no contract between them and

22  Defendants.  *Id*. at 18.

23      **D.    Reply**

24      Defendants argue that the chain of properly recorded documents establish their authority to

25  foreclose and render the authority cited by Plaintiffs inapplicable.  Reply in Support of Motion to

26  Dismiss ("Reply"), 3-6.  In addition, Defendants contend that Plaintiffs have not suffered injury from

27  any assignment because they have defaulted and are subject to foreclosure, there is no likelihood that

28

United States District Court
Northern District of California

9

relief will prevent that injury.  *Id*. at 6 (citing *Javaheri v. JP Morgan Chase Bank, N.A.*, 2011 WL 2173786, at *5 (C.D. Cal. 2011)).

## III.    JUDICIAL NOTICE

Defendants request judicial notice of six publicly recorded documents:  (1) the DOT; (2) the First Assignment; (3) the Second Assignment; (4) the Substitution; (5) the NOD; and (6) the NTS.  Plaintiffs do not object to judicial notice of any of the documents themselves as public records.  However, Plaintiffs generally dispute the accuracy of the statements in each document, and object to judicial notice of those statements.  Nevertheless, Plaintiffs attached "true and correct" copies each of the documents as exhibits to the Complaint and "incorporated [the documents] by reference as though fully set forth [in the Complaint]."  Complaint, ¶¶ 7, 10, 14, 17, 19, 22, Exs. A-G.  In deciding a 12(b)(6) motion, the court may "consider materials that are submitted with and attached to the Complaint."  *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  Therefore, the Court will consider the six documents in resolving this Motion, although it does not take judicial notice of them.  *See Corinthian Colleges*, 655 F.3d at 999 (discussing judicial notice as a separate mechanism by which a court may consider certain documents in deciding a 12(b)(6) motion).

## IV.    ANALYSIS

### A.    Legal Standard

#### 1.    Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may

United States District Court
Northern District of California

be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 545 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### 2.     Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The plaintiff must include "the who, what, when, where, and how" of the fraud. *Id.* at 1106 (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must be "specific enough to give defendants notice of the particular conduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

//

11

United States District Court
Northern District of California

1

**B.      Wrongful Foreclosure**

2      Plaintiffs' wrongful foreclosure cause of action is premised on the conclusion that the wrong

3  entity initiated foreclosure.  As discussed below, this claim is dismissed with leave to amend.

4          **1.      Background Law**

5          **a.      Tender Rule**

6      As a general rule under California law, "an action to set aside a trustee's sale for irregularities

7  in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for

8  which the property was security."  *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578, 205

9  Cal.Rptr. 15 (1984); *see also Karlsen v. Am. Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr.

10  851 (1971) ("[a] valid and viable tender of payment of the indebtedness owing is essential to an action

11  to cancel a voidable sale under a deed of trust").  "[T]he rationale behind the rule is that if plaintiffs

12  could not have redeemed the property had the sale procedures been proper, any irregularities in the

13  sale did not result in damages to the plaintiffs."  *Barrionuevo*, 885 F.Supp.2d at 969 (quotations

14  omitted); *Lester v. J.P. Morgan Chase Bank*, 2013 WL 633333, at *8 (N.D. Cal. Feb. 20, 2013)

15  (quotations omitted).

16      The tender rule is not absolute.  Courts have discretion to excuse the tender requirement where

17  its application would be inequitable.  *See Pantoja v. Countrywide Home Loans*, 640 F.Supp.2d 1177,

18  1184 (N.D. Cal. 2009); *Onofrio v. Rice*, 55 Cal.App.4th 413, 424, 64 Cal.Rptr.2d 74 (1997).  In

19  addition, a growing number of federal courts sitting in California have held that the tender rule only

20  applies in cases seeking to set aside a completed sale, rather than to an action seeking to prevent a sale

21  in the first place.  *See Barrionuevo*, 885 F.Supp.2d at 970-971 (collecting cases); *Lester*, 2013 WL

22  633333 at *8 (collecting cases); *see also Chan Tang v. Bank of America, N.A.*,  2012 WL 960373, at

23  *4-*7 (C.D. Cal. Mar. 19, 2012) (discussing split of authority as to whether tender rule applies to

24  pending foreclosure sales and concluding that tender should not be required because there is no basis

25  for its application pre-sale as equity may require postponement of a sale to ensure compliance with

26  the statutory framework even if it will not require unwinding of a sale in the absence of an ability to

27  tender; distinguishing *Alicea*, 2009 WL 2136969 because on the facts of that case the foreclosure sale

28  had already occurred).

1    Several courts have refused to apply the tender requirement where plaintiff alleges that the

2    defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be

3    void rather than merely voidable.  *Lester v. J.P. Morgan Chase Bank*, 2013 WL 633333, at *10 (N.D.

4    Cal. Feb. 20, 2013); *Barrionuevo*, 885 F.Supp.2d at 970-971; *Dimock v. Emerald Props. LLC*, 81

5    Cal.App.4th 868, 878, 97 Cal.Rptr.2d 255 (2000) (where an incorrect trustee had foreclosed on a

6    property and conveyed it to a third party, and the conveyed deed was not merely voidable but void,

7    tender was not required).  The rationale for this distinction is the equitable policies supporting the

8    tender rule.  That is, "tender is required 'based on the theory that one who is relying upon equity in

9    overcoming a voidable sale must show that he is able to perform his obligations under the contract so

10   that equity will not have been employed for an idle purpose.'"  *Barrionuevo*, 885 F.Supp.2d at 971

11   (quoting *Dimock*, 81 Cal.App.4th at 876, 97 Cal.Rptr.2d 255).  However, where a sale is void at the

12   outset, rather than voidable, the transaction is a "nullity with no force or effect as opposed to one

13   which may be set aside" in equity.  *Id.* (quoting *Dimock*, 81 Cal.App.4th at 876, 97 Cal.Rptr.2d 255).

### b.    Securitization

15       "Ninth Circuit district courts have come to different conclusions when analyzing plaintiff's

16   right to challenge the securitization process as Plaintiff[s] [have] here."  *Johnson v. HSBC Bank USA,*

17   *N.A.*, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012) (citing *Schafer v. CitiMortgage, Inc.*, 2011

18   WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion to dismiss declaratory relief

19   claim, which was based on alleged improper transfer due to alleged fraud in signing of documents);

20   *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011) (allowing §

21   17200 claim when plaintiffs alleged that assignment was executed after the closing date of securities

22   pool, "giving rise to a plausible inference that at least some part of the recorded assignment was

23   fabricated"); *Armeni v. America's Wholesale Lender*, 2012 WL 603242, at *2 (C.D. Cal. Feb. 24,

24   2012); *Junger v. Bank of America, N.A.*, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012)).  The

25   majority position is that plaintiffs lack standing to challenge noncompliance with a PSA in

26   securitization unless they are parties to the PSA or third party beneficiaries of the PSA.  *See Aniel v.*

27   *GMAC Mortg., LLC*, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2, 2012) (collecting cases);

28   *Almutarreb v. Bank of New York Trust Co., N.A.*, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012)

1    (disagreeing with *Vogan* and *Johnson* in finding that, because Plaintiffs were neither parties nor third

2    party beneficiaries to the PSA, they lacked standing to challenge whether the loan transfer occurred

3    outside the temporal bounds described in the PSA) (citing cases).  This Court follows the majority

4    approach.

5                        **c.      General Principles**

6        In California, a "deed of trust containing a power of sale … conveys nominal title to property

7    to an intermediary, the 'trustee,' who holds that title as security for repayment of [a] loan to [a] lender

8    or 'beneficiary.'"  *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 334, 85 Cal.Rptr.3d 532 (2008)

9    (citations omitted).  The "trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties,

10   but rather a common agent for the trustor and beneficiary."  *Id.* at 335.  The trustee's duties "are

11   twofold:  (1) to 'reconvey' the deed of trust to the trustor upon satisfaction upon satisfaction of the

12   debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to

13   initiate nonjudicial foreclosure on the property upon trustor's default, resulting in a sale of the

14   property."  *Id.* at 334.  The "trustee, mortgagee, or beneficiary, or any of their authorized agents"

15   initiate the nonjudicial foreclosure process by filing a notice of default.  Cal. Civ. Code § 2924(a)(1).

16       "Several courts have recognized the existence of a valid cause of action for wrongful

17   foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of

18   Default and initiate nonjudicial foreclosure."  *Barrionuevo*, 885 F.Supp.2d at 973-974 (collecting

19   cases) (cause of action for wrongful foreclosure where Plaintiff alleged that Chase lacked authority to

20   foreclose because Washington Mutual Securitized the subject loan, divesting itself of any interest,

21   prior to transferring its beneficial interest to Chase); *see also Ohlendorf v. Am. Home Mortg. Serv'g*,

22   279 F.R.D. 575, 583 (E.D. Cal. 2010) (plaintiff may have stated a claim for wrongful foreclosure

23   based on the wrong party initiating foreclosure where MERS was the beneficiary under the deed of

24   trust at the time the notice of default was initiated, the notice of default listed Deutsche as the

25   beneficiary and AHMSI as the trustee, MERS later filed a backdated assignment of the beneficial

26   interest to AHMSI, and eleven seconds later AHMSI recorded a backdated assignment of the

27   mortgage to Deutsche); *Sacchi*, 2011 WL 2533029 at *6 (plaintiff stated a cause of action for

28   wrongful foreclosure where judicially noticed documents showed that RCS executed a substitution of

                                            14

1  trustee in favor of Fidelity at a time when RCS had no beneficial interest in the deed, making all

2  subsequent recordations by Fidelity, including the notice of trustee's sale, invalid); *Javaheri*, 2011

3  WL 2173786 at *5-*6 (plaintiff stated a claim for wrongful foreclosure by alleging that the mortgage

4  was sold by Washington Mutual to a specific security, which thereafter transferred the mortgage to

5  another specific security, preventing Chase, the defendant, from obtaining the mortgage when it

6  acquired Washington Mutual's assets; and where Chase had not recorded its claim of ownership).

7      California decisions have supported such an approach.  *See Gomes*, 192 Cal.App.4th at 1156,

8  121 Cal.Rptr.3d 819 (upholding dismissal of a wrongful foreclosure action and noting as "significant"

9  that cases cited by the plaintiff permitting a wrongful foreclosure action "identified a *specific factual*

10 *basis* for alleging that the foreclosure was not initiated by the correct party" whereas the plaintiff had

11 failed to identify "*any* factual basis" for that conclusion); *Robinson v. Countrywide Home Loans, Inc.*,

12 199 Cal.App.4th 42, 46, 46 n.5, 130 Cal.Rptr.3d 811 (2011) (holding that plaintiffs' claims for

13 damages and declarative relief were precluded the foreclosure scheme does not provide for a

14 preemptive suit to challenge standing to initiate foreclosure but noting that a borrower who believes

15 the foreclosing entity lacks standing to do so can seek to enjoin the trustee's sale or set aside the sale);

16 *but see Robertson v. Citibank, N.A.*, 2013 WL 752491, at *4 (N.D. Cal. Feb. 27, 2013) (interpreting

17 *Robinson* and *Gomes* to foreclose a judicial action to determine whether the person initiating the

18 foreclosure process is indeed authorized).

19      California courts have rejected claims for wrongful foreclosure where the plaintiff attempts,

20 but fails, to demonstrate that the foreclosing entity lacked authority to do so.  *See Gomes*, 192

21 Cal.App.4th at 1156, 121 Cal.Rptr.3d 819; *Herrera*, 205 Cal.App.4th at 1502, 141 Cal.Rptr.3d 326;

22 *Fontenot*, 198 Cal.App.4th at 270-271, 129 Cal.Rptr.3d 467 (affirming trial court's judgment

23 sustaining defendants' demurrers without leave to amend; holding in relevant part, plaintiff's

24 allegation that MERS lacked authority to transfer the beneficial interest in the note because MERS

25 was merely a nominee beneficiary failed because MERS was acting as an agent of the lender pursuant

26 to the language in the deed of trust, which did have an assignable beneficial interest).

27      *Herrera* is closely analogous to the present case.  In *Herrera*, IndyMac was the original lender

28 of plaintiffs' mortgage.  *Herrera*, 205 Cal.App.4th at 1505, 141 Cal.Rptr.3d 326.  Pursuant to the

United States District Court
Northern District of California

terms of the deed of trust, MERS held the right to exercise all interests and rights held by the lender and its successors and assigns, including the right to assign the deed of trust and to foreclose on the subject property. *Id*. at 1504. Subsequently, the FDIC and IndyMac Federal succeeded to IndyMac's beneficial interest in the loan. *Id*. at 1505. Thereafter, MERS assigned the deed of trust and the beneficial interest in the mortgage note to OneWest. *Id*. In turn, OneWest assigned the deed of trust to Fannie Mae. *Id*. at 1498. Ultimately, Fannie Mae foreclosed on plaintiffs' property. *Id*.

The plaintiffs alleged that MERS lacked authority to transfer the beneficial interest in the loan to OneWest because it did not have an agency relationship with the FDIC or IndyMac Federal, invalidating the subsequent transactions and resulting foreclosure sale. *Id*. at 1505. The court held that this allegation did necessarily not defeat the foreclosure sale because plaintiffs agreed in the deed of trust that MERS had the right to exercise all rights of the lender. *Id*. Therefore, the court affirmed the trial court's decision granting defendant's demurrer without leave to amend. In addition, the court noted that assignment of the beneficial interest in the debt is commonly not recorded, meaning the debt may have been passed without plaintiffs' knowledge. *Id*. at 1506.

The court in *Herrera* also determined that the plaintiffs could not assert a wrongful foreclosure cause of action because they could not demonstrate that they had been prejudiced by the alleged wrongful transfer. *Id*. at 1508. That is, "[i]f MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but original lender, which would have suffered the unauthorized losss of a $1 million promissory note." *Id*. (quoting *Fontenot*, 198 Cal.App.4th at 272, 129 Cal.Rptr.3d 467). The court noted that the assignment merely substituted one creditor for another without changing the plaintiffs' obligations, such that plaintiffs would have been foreclosed upon regardless of the validity of the assignment. *Id*. at 1507-1508.

The cases finding that plaintiffs stated a cause of action for wrongful foreclosure prior to sale on the basis that the incorrect entity initiated foreclosure rarely discuss prejudice. In *Tamburri*, one such case, the court held that, to the extent prejudice is required, "the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default." *Tamburri*, 2011 WL 6294472 at *14; *see also*

United States District Court
Northern District of California

*Albano v. Cal-Western Reconveyance Corp.*, 2013 WL 7722665, at *4 (N.D. Cal. Feb. 28, 2013) (distinguishing *Tamburri* from the situation where the foreclosure sale has already taken place).

### 2.    Application to Facts

Plaintiffs' allegations, to the extent they are not contradicted by the documents they have attached to their Complaint, are insufficient to state a claim for wrongful foreclosure.  Plaintiffs have not pled a specific factual basis for their conclusion that neither Bank of America nor the 2006-OA14 Trust owned the beneficial interest in their mortgage.  Plaintiffs' wrongful foreclosure cause of action is dismissed with leave to amend.[3]

First, Plaintiffs allege that BrooksAmerica was the lender under their DOT.  Complaint, ¶ 7.  Plaintiffs allege that MERS was the nominal beneficiary for the original lender only.  *Id*.  As discussed below, this reading supports their contention that when BrooksAmerica, the original lender, sold its interest in the mortgage loan it terminated MERS' role as nominal beneficiary.  However, this allegation is contradicted by the DOT, attached to Plaintiffs' Complaint, which states:  "The beneficiary of this security instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS)."  *Id*. at Ex. A at 3.  Pursuant to the DOT, "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of [the interests granted by Borrower in the DOT], including, but not limited to, the right to foreclose and sell the Property."  *Id*.

Second, Plaintiffs allege that their mortgage was sold to the 2006-OA14 Trust before its cut-off date of September 1, 2006.  *Id*. at ¶ 9.  Based on their first allegation, Plaintiffs allege that this transaction, or else the fact that BrooksAmerica no longer existed by 2012, terminated MERS' role as nominal beneficiary under the DOT.  *Id*. at ¶ 11.  Once again, the DOT contradicts Plaintiffs' allegation.  Under the language quoted above, MERS acts as nominee for Lender and Lender's successors and assigns.  Plaintiffs have pled no facts and put forward no argument to support their legal conclusion that the assignment of the beneficial interest under the DOT to the 2006-OA14 Trust disrupted MERS' role as nominee beneficiary in light of the language in the DOT specifically stating that MERS' role would survive assignment.

---

[3] The Court does not reach the applicability of the tender rule or the question of whether Plaintiffs could demonstrate prejudice caused by the allegedly wrongful assignments.

1    Third, Plaintiffs allege that the securitization in the 2006-OA14 Trust was ineffectual because

2  the putative transfer did not comply with the chain of title protocol set forth in the PSA governing the

3  trust.  *Id*. at ¶ 23.  Therefore, Plaintiffs allege that the trust, and indeed no entity, owns the beneficial

4  interest in their mortgage loan.  *Id*. at ¶ 23 and page 2.  This argument must be rejected because

5  Plaintiffs are not party to, or third party beneficiaries of, the PSA and, therefore, do not have standing

6  to enforce it.[4]

7    Fourth, Plaintiffs challenge MERS' transfer of the beneficial interest under the DOT to Bank

8  of America, and the subsequent recordations flowing therefrom, for two reasons.  First, Plaintiffs

9  allege that the transfer was invalid because MERS was no longer the nominal beneficiary under the

10  DOT.  *Id*. at ¶ 11.  As discussed above, the allegations underlying that conclusion are contradicted by

11  the documents incorporated by reference in the Complaint.

12    Second, Plaintiffs allege that both the First and Second Assignments were signed by persons

13  who were in fact agents of Bank of America, not MERS.  *Id*. at ¶¶ 13-15, 17.  Based on these

14  deficiencies, Plaintiffs allege that Bank of America never obtained a beneficial interest in the loan and

15  thus the Substitution, NOD, and NTS flowing therefrom are all void.  *Id*. at ¶¶ 17-20, 22.

16    The First Assignment was signed by Muradyan.  Plaintiffs offer only the bare assertion, "on

17  information and belief, Muradyan, a known robo-signer, was not an employee of MERS but instead

18  was employed by Defendant BOA."  Complaint, ¶ 13, 39.  District courts have consistently refused to

19  find that a plaintiff can state a claim on the basis of a conclusory allegation of robo-signing, absent

20  some factual support.  *See Cerecedes v. U.S. Bankcorp*, 2011 WL 2711071, at *5 (C.D. Cal. July 11,

21  2011) (dismissing a UCL claim based on robo-signing allegations stating that, while "mindful of

22  reports that financial institutions were using so-called 'robo-signers' to improperly sign documents

23  used in the foreclosure process[,] … Rule 9(b) and *Twombly* require plaintiffs to set forth more than

24

25  _____
   [4] In Opposition, Plaintiffs argue that they are not attempting to enforce the terms of the PSA.  Opposition, 10.  Instead,

26  Plaintiffs argue that the "securitization documents" are offered to show that although their mortgage was sold to the 2006-
   OA14 Trust, it was not done in compliance with "basic trust transfer requirements."  *Id*. at 10-11.  "Plaintiff[s] rel[y] on

27  the securitization agreements to show that BOA and also the [2006-OA14 Trust] cannot be true beneficiaries of the
   Subject L[o]an."  *Id*. at 11.  The only "securitization documents" that Plaintiffs presented to the Court, by reference in
   their Complaint, was the 2006-OA14 Trust PSA.  Plaintiffs cite no other authority to show that Defendants failed to

28  comply with any "basic trust transfer requirements."  Thus, regardless of Plaintiffs' characterization, this argument is an
   attempt to enforce the terms of the PSA.

United States District Court
Northern District of California

bare allegations of 'robo-signing' without any factual support"); *Sohal v. Federal Home Loan Mortg. Corp.*, 2011 WL 3842195, at *5 (N.D. Cal. Aug. 30, 2011) (dismissing a wrongful foreclosure claim as to the trustee and its agent where required bad faith allegations were that various documents were robo-signed, but plaintiffs did not allege facts setting forth the basis on which they were informed or believed that those allegations were true); *Chan Tang*, 2012 WL 960373 at *10-*11 (denying motion to dismiss a wrongful foreclosure claim based on robo-signing where plaintiffs submitted documents that showed the alleged robo-signer acting as an agent of MERS only a few months before acting as an agent for BOA). Plaintiffs have not supported their conclusory allegation that Muradyan is a robo-signer without proper authority to execute the First Assignment with any supporting factual allegations. Therefore, Plaintiffs have not sufficiently pled that the First Assignment was invalid.

The Court need not consider whether the Second Assignment, signed by Stone, is valid because, under the facts alleged, the First Assignment would have been sufficient to pass the beneficial interest to Bank of America. Moreover, Plaintiffs allege that Stone was an agent of Bank of America, so there is no basis in the Complaint to conclude that the Substitution was invalid as a result of robo-signing. Plaintiffs' attacks on the NOD and the NTS rely on the validity of the previous assignments. Therefore, on the facts alleged, Plaintiffs have not pled facts to support their conclusion that Bank of America lacked authority to initiate foreclosure.

### i.   Bank of America

As discussed above, Plaintiffs have not pled facts to support their conclusion that Bank of America lacked a beneficial interest in their loan. Their wrongful foreclosure claim against Bank of America is dismissed with leave to amend.

### ii.   BNY Mellon

Plaintiffs allege that Recon, the foreclosing trustee, purports to act as the agent for Bank of America, as beneficiary. Complaint, ¶ 19. In pleading their wrongful foreclosure cause of action, Plaintiffs refer to Bank of America and BNY Mellon in the alternative. *Id.* at ¶ 32. Plaintiffs never allege that BNY Mellon instructed Recon to initiate foreclosure. Plaintiffs' cause of action for wrongful foreclosure against BNY Mellon is therefore dismissed with leave to amend.

//

### iii.     MERS

Plaintiffs make no allegation that MERS is involved in the pending foreclosure process. MERS only alleged involvement is in transferring the beneficial interest in Plaintiffs' mortgage secured by the DOT to Bank of America before the NOD was issued.  Plaintiffs have not stated a claim against MERS for wrongful foreclosure.  Plaintiffs will be given leave to amend.

### C.     Quiet Title

#### 1.     Background Law

An action to quiet title may be brought to establish title against adverse claims to real property or any interest therein.  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F.Supp.2d 1048, 1057 (citing Cal. Code Civ. Proc. § 760.020).  A quiet title action must be in a verified complaint that includes:  (1) a description of the property in question; (2) the title of the plaintiff as to which a determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) that date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 974-975 (N.D. Cal. 2010) (citing Cal. Code Civ. Proc. § 761.020).  "'Claim' includes legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  Cal. Code Civ. Proc. § 760.010(a).

In most circumstances, a requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e. that they have satisfied their obligations under the deed of trust."  *See Kelley*, 642 F.Supp.2d at 1057.  Thus, it is normally dispositive as to this claim that, under California law, a borrower may not assert a quiet title action against a mortgagee without first paying the outstanding debt on the property.  *See Rosenfeld*, 732 F.Supp.2d at 975; *see also Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1206 (S.D. Cal. 2010) (dismissing quiet title cause of action for failure to allege tender).  However, as discussed above, courts have refused to apply the tender requirement where plaintiff alleges that the defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be void rather than merely voidable.  *See Lester*, 2013 WL 633333 at *10 (dismissing quiet title cause of action with leave to amend, as opposed to with

1   prejudice, after concluding that the tender rule did not apply to a quiet title action where the

2   underlying foreclosure was allegedly void, not voidable).

3   **2.      Application to Facts**

4   Plaintiffs "seek a declaration that the title to the Subject Property is vested in Plaintiffs alone,

5   free and clear of encumbrances in favor of Defendants and persons unknown." Complaint, ¶ 37. As a

6   preliminary matter, Plaintiffs' Complaint is defective because they have not alleged that date as of

7   which a determination is sought. Moreover, as discussed above, the Complaint does not contain

8   factual allegations to support the conclusion that Plaintiffs hold the property free and clear of any

9   encumbrances. In addition, there is no basis to excuse the tender requirement where, as here,

10   Plaintiffs seek to quiet title against Defendants and persons unknown, including the allegedly

11   unidentified true owner of the beneficial interest in Plaintiffs' mortgage. As in *Kelley*, "Plaintiffs

12   have not alleged that they are the rightful owners of the property, i.e. that they have satisfied their

13   obligations under the Deed of Trust." *See Kelley*, 642 F.Supp.2d at 1057. Accordingly, Plaintiffs'

14   claim to quiet title is dismissed with leave to amend.

15   **D.      Cancellation of Instruments**

16   **1.      Background Law**

17   The Court may order cancellation of an invalid written instrument that is void or voidable.

18   *Compass Bank v. Petersen*, 886 F.Supp.2d 1186, 1194 (C.D. Cal. 2012) (citing Cal. Civ. Code § 3412

19   *et seq.*). Courts have applied the tender rule to causes of action for cancellation of instruments

20   pertaining to the foreclosure process. *See Kimball v. Flagstar Bank F.S.B.*, 881 F.Supp.2d 1209,

21   1225-1226 (S.D. Cal. 2012); *Adesokan v. U.S. Bank, N.A.*, 2012 WL 395969, at *4 (E.D. Cal. Feb. 7,

22   2012);

23   **2.      Application to Facts**

24   As discussed above, Plaintiffs have not sufficiently pled that the First Assignment,

25   Substitution, NOD, and NTS were invalid. Therefore, Plaintiffs claim for cancellation of instruments

26   is dismissed with leave to amend.

27   //

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

**E.      Unjust Enrichment**

**1.      Background Law**

In California, a claim for unjust enrichment is understood as one for restitution.  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 964 (N.D. Cal. 2012).  To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'"  *Id*.

**2.      Application to Facts**

Plaintiffs restitution claim, as alleged, fails because they have not pled facts supporting the allegation that Bank of America was not entitled to collect mortgage payments from them.  As this was their first opportunity to plead this cause of action, Plaintiffs will be given leave to amend.

Plaintiffs allege that Bank of America and its predecessors in interest collected mortgage payments from them on behalf of BNY Mellon, which was sued in its capacity as trustee of the OA-14 Trust.  Complaint, ¶ 62.  Plaintiffs repeatedly allege that Bank of America was the servicer for the trust.  *See*, *e.g.*, *id*. at ¶¶ 8, 62   However, Plaintiffs allege that the trust was not a proper beneficiary of their mortgage because it was improperly securitized.  *Id*. at ¶ 62.  As discussed above, Plaintiffs have no standing to challenge securitization, so the claim must be rejected on this basis.

In the alternative, Plaintiffs allege that Bank of America had no direct authority as beneficiary to collect payments from them as a result of the First or Second Assignment.  *Id*.  However, Plaintiffs do not allege that they made any payments after either assignment.  In any event, on the facts alleged, Bank of America would have been entitled to collect payments after the assignments either on its own behalf or as the loan servicer.  There is no allegation that Bank of America improperly retained any payments that it should have provided to the 2006-OA14 Trust.

**F.      Fraud**

**1.      Background Law**

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Hinesley v. Oakshade Town Ctr.*, 135 Cal.App.4th 289, 294-295, 37 Cal.Rptr.3d 364 (2005) (citing *Lazar*, 12 Cal.4th at 638, 49 Cal.Reptr.2d 377, 909 P.2d 981).  To

1    plead a claim for fraud in the inducement, Plaintiffs' allegations must be sufficiently detailed to meet

2    the heightened Rule 9(b) pleading standard for fraud.  *Parino v. BidRack, Inc.*, 838 F.Supp.2d 900,

3    906 (N.D. Cal. 2011).

### 2.      Application to Facts

5          Plaintiffs allege fraud on two theories.  First, Plaintiffs allege fraud on the basis of the First

6    and Second Assignments, the Substitution, the NOD, and the NTS.  Second, Plaintiffs allege fraud on

7    the theory that Bank of America and its predecessors in interest fraudulently collected payments as the

8    loan servicer for the 2006-OA14 Trust even though the Trust had no beneficial interest in Plaintiffs'

9    mortgage.  As discussed above, both of these theories fail.  Plaintiffs' claim for fraud is dismissed

10   with leave to amend.

### G.      UCL

### 1.      Background Law

13         The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

14   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  A claim may be brought under

15   the UCL "by a person who has suffered injury in fact and has lost money or property as a result of

16   unfair competition."  Cal. Bus. & Prof. Code § 17204.  Therefore, to establish standing under the UCL

17   a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e.,

18   *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair

19   business practice … that is the gravamen of the claim."  *Lawther v. OneWest Bank, FSB*, 2012 WL

20   298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp.*, 51 Cal.4th 310, 337, 120

21   Cal.Rptr.741, 246 P.3d 877).

22         To establish a violation of Section 17200, a plaintiff may establish a violation under any one

23   of three prongs.  To state a cause of action based on an "unlawful" business act or practice under the

24   UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v.*

25   *McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).  A "fraudulent" business act or

26   practice is one in which members of the public are likely to be deceived.  *Weinstat v. Dentsply Intern.,*

27   *Inc.*, 180 Cal.App. 4th 1213, 1223 n.8, 103 Cal.Rptr.3d 614 (2010) (citations omitted).  "'Fraudulent,'

28   as used in the statute, does not refer to the common law tort of fraud but only requires a showing that

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1    members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.App.4th 608, 618, 55

2    Cal.Rptr.2d 818 (1996).  UCL claims premised on fraudulent conduct trigger the heightened pleading

3    standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co.*, 567 F.3d

4    1120, 1125 (9th Cir.2009).

5           Finally, while there is disagreement among California courts regarding the definition of

6    "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo*

7    explains:

8           In consumer cases, such as this, the California Supreme Court has not established a
            definitive test to determine whether a business practice is unfair. *Drum v. San Fernando
9           Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of
            authority has developed among the California Courts of Appeal, which have applied three
10          tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d
            46.
11

12          The test applied in one line of cases requires "that the public policy which is a predicate
            to a consumer unfair competition action under the 'unfair' prong of the UCL must be
13          tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182
            Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136
14          Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit
            Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v.
15          Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
16

17          . . .

18          A second line of cases applies a test to determine whether the alleged business practice "is
            immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and
19          requires the court to weigh the utility of the defendant's conduct against the gravity of the
            harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing
20          *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–
            595, 101 Cal.Rptr.3d 697)).
21

22          . . .
23
            The test applied in a third line of cases draws on the definition of "unfair" in section 5 of
24          the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the
            consumer injury must be substantial; (2) the injury must not be outweighed by any
25          countervailing benefits to consumers or competition; and (3) it must be an injury that
            consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at
26          257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697;
            *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48
27          Cal.Rptr.3d 770 (2006)).
28

24

2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

    **2.**   **Application to Facts**

   Plaintiffs UCL claim rests on the same two theories as their fraud claim.  It fails for the same reasons.[5]

## V.  CONCLUSION

   For the foregoing reasons, Plaintiffs' Complaint is dismissed with leave to amend.  Any amended complaint shall be filed within ten (10) days of this Order.

   IT IS SO ORDERED.

Dated: March 12, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[5] In addition to violations of the foreclosure statutes, Plaintiffs allege violations of (1) California Civil Code section 1095 ("When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact"); (2) California Civil Code section 1708 ("Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights"); (3) California Civil Code section 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers"); and (4) California Penal Code section 115 (regarding procuring or offering false or forged instruments for record).  On the facts alleged, Plaintiffs have not pled a violation of these statutes that caused them economic harm.